UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------------------- X

AKIVA BINYAMIN JAKUBOWICZ,
Rehov Shaulzon 16, Jerusalem, Israel 95400;

FLORENCE TZIPPORA JAKUBOWICZ,
Rehov Shaulzon 16, Jerusalem, Israel 95400;

BERNARD (BEN ZION) JAKUBOWICZ,
Rehov Shaulzon 16, Jerusalem, Israel 95400;

YONATON ELIEZER JAKUBOWICZ,
Rehov Adirim 449, POB 639, Tekoa, Israel 909080;

RACHEL CHANA ANAKI,
Rehov Shaulzon 16, Jerusalem, Israel 95400;

AYELET TIKVA JAKUBOWICZ,
Rehov Shaulzon 16, Jerusalem, Israel 95400;

RITA AVNI (ANKORI), individually and as the natural
guardian of minor plaintiffs, E.A, R.A., and V.A.,
38 Yehuda Halevi Street, Tel Aviv, Israel 6578202;

E.A.;

R.A.;

V.A.;

MICAH JONATHAN LAKIN, on behalf and as the
natural guardian of minor plaintiffs Y.L., R.A. and V.A.,
38 Yehuda Halevi Street, Tel Aviv, Israel 6578202;

Y.L.;

MANYA JUDITH LAKIN, on behalf and as the natural
guardian of D.A.B.,
14 Mitzpeh Horev Street, Modi'in, Israel 7175003

D.A.B.;

SHACHAR BOTEACH,
14 Mitzpeh Horev Street, Modi'in, Israel 7175003;

CHAGAI MOLODIC,
Hanekhalim 10, Yad Binyamin, Israel;

18-cv-1450

AVITAL MOLODICK,
Simtaat Amasa 3, Yad Binyamin, Israel;

CHAYIM YOSEF KUMER, on behalf and as the natural
guardian of the minor plaintiff C.L.K.,
Rehov Hashiva 208, Tzfat, Israel 13410;

NECHAMA DINA KUMER on behalf and as the natural
guardian of the minor plaintiff C.L.K.,
Rehov Hashiva 208, Tzfat, Israel 13410;

C.L.K;

and

MALKA KUMER,
Rehov Hashiva 208, Tzfat, Israel 13410;

Plaintiffs,

-against-

THE ISLAMIC REPUBLIC OF IRAN
c/o Foreign Minister Dr. Mohammad Javad Zarif
Ministry of Foreign Affairs, Khomeini Ave. United
Nations St., Teheran, Iran;

THE IRANIAN MINISTRY OF INFORMATION AND
SECURITY
c/o Minister of Intelligence Mahmoud Alevi
Pandacan Ave., Golestan Ykon, Teheran, Iran

and

THE SYRIAN ARAB REPUBLIC
c/o Foreign Minister Walid al-Muallem
Ministry of Foreign Affairs
Shora, Muajireen, Damascus, Syria,

Defendants.

-------------------------------------------------------------------X

## COMPLAINT

Plaintiffs, by their counsel, complain of the Defendants, and hereby allege for their Complaint as follows:

## INTRODUCTION

1.     This is a civil action for wrongful death, personal injury, and related torts pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*., arising from terror attacks in Israel carried about by agents of Hamas, the Palestine Islamic Jihad ("PIJ"), and Hezbollah between 2006 and 2015.

2.     These terrorist attacks were carried out by Hamas, PIJ, and Hezbollah using material support and resources provided by defendants: the Islamic Republic of Iran'("Iran"), the Iranian Ministry of Information and Security ("MOIS"), and the Syrian Arab Republic ("Syria").

3.     Plaintiff Akiva Binyamin Jakubowicz was shot and seriously injured in a Hamas shooting attack in 2008. Plaintiffs Malka Kumer and C.L.K. suffered psychological and emotional injuries as a direct result of the Hezbollah rocket attacks in 2006.

4.     The remaining plaintiffs are family members who suffered psychological and emotional trauma as a direct result of terror attacks that killed or injured their family members. Richard Lakin was a victim of the Bus 78 Hamas shooting and stabbing attack in Jerusalem in 2015. Mr. Lakin succumbed to his wounds two weeks after the attack. Plaintiffs, Rita Avni (Ankori), Shachar Boteach and the minor plaintiffs D.A.B, Y.L, E.A., R.A, and V.A. are, respectively, the daughter-in-law, and grandchildren of Richard Lakin. Plaintiffs Chagai Molodic and Avital Molodick are the step-children of Yehuda Glick who was seriously injured in a targeted assassination attempt by an agent of the PIJ in 2014.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367, 1605 note, and 1605A(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

## THE PARTIES

6.      Plaintiff Akiva Binyamin Jakubowicz, who was severely wounded in a Hamas shooting terrorist attack, at all times relevant hereto, is and was an American citizen domiciled in Israel.

7.      Plaintiff Florence Tzippora Jakubowicz, the mother of Akiva Jakubowicz, at all times relevant hereto, is and was an American citizen domiciled in Israel.

8.      Plaintiff Bernard (Ben Zion) Jakubowicz, the father of Akiva Jakubowicz, at all times relevant hereto, is and was a Canadian and Israeli citizen domiciled in Israel.

9.      Plaintiff Yonaton Eliezer Jakubowicz, the brother of Akiva Jakubowicz, at all times relevant hereto, is and was an American citizen domiciled in Israel.

10.      Plaintiff Rachel Chana Anaki, the sister of Akiva Jakubowicz, at all times relevant hereto, is and was an American citizen domiciled in Israel.

11.      Plaintiff Ayelet Tikva Jakubowicz, the sister of Akiva Jakubowicz, at all times relevant hereto, is and was an American citizen domiciled in Israel.

12.      Plaintiff Rita Avni (Ankori), the daughter in-law of Richard Lakin, who was mortally wounded in a Hamas shooting and stabbing terrorist attack, at all times relevant hereto, is and was an Israeli citizen domiciled in Israel.

13.      Plaintiffs E.A., R.A., and V.A., the minor children of plaintiff Rita Avni (Ankori) and the grandchildren of Richard Lakin, who was mortally wounded in a Hamas shooting and

stabbing terrorist attack, at all times relevant hereto, are and were Israeli citizens domiciled in Israel.

14.     Plaintiff Y.L., the minor child of Micah Jonathan Lakin and the grandson of Richard Lakin who was mortally wounded in a Hamas shooting and stabbing terrorist attack, at all times relevant hereto, is and was an American citizen domiciled in Israel.

15.     Plaintiff D.A.B., the minor child of Manya Judith Lakin and the grandson of Richard Lakin who was mortally wounded in a Hamas shooting and stabbing terror attack, at all times relevant hereto, is and was an American citizen domiciled in Israel.

16.     Plaintiff Shachar Boteach, the granddaughter of Richard Lakin who was mortally wounded in a Hamas shooting and stabbing terror attack, at all times relevant hereto, is and was an American citizen domiciled in Israel.

17.     Plaintiff Chagai Molodic, the stepson of Yehuda Glick who was severely wounded in a PIJ shooting terrorist attack, at all times relevant hereto, is and was an Israeli citizen domiciled in Israel.

18.     Plaintiff Avital Molodick, the stepdaughter of Yehuda Glick, who was severely wounded in a PIJ shooting terrorist attack at all times relevant hereto, is and was an Israeli citizen domiciled in Israel.

19.     Plaintiffs Malka Kumer and the minor C.L.K. at all times relevant hereto is and were American citizens who were injured by rocket attacks carried out by the Hezbollah terrorist organization between July 12 and August 14, 2006.

20.     Defendant Islamic Republic of Iran ("Iran") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated since 1984 as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50

U.S.C. § 2405(j)). Iran, through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the Iranian Ministry of Information and Security, provided Hamas, PIJ and Hezbollah with material support and resources for acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A(a)(1), including the terrorist attacks at issue herein, and performed other actions that enabled, facilitated, and caused the terrorist attacks at issue herein and harm to the plaintiffs herein.

21.     Defendant the Iranian Ministry of Information and Security ("MOIS") is the Iranian intelligence service. Within the scope of its agency and office, MOIS provided material support and resources for the commission of acts of extrajudicial killing, including the terrorist attacks at issue herein, and performed other actions, that enabled, facilitated and caused the terrorist attacks and harm to the plaintiffs herein.

22.     Defendant the Syrian Arab Republic (hereinafter "Syria") is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Syria provided Hamas and PIJ with material support and resources for the commission of acts of extrajudicial killing within the meaning of 28 U.S.C. § 1605A (a)(1), including the terrorist attacks at issue herein carried out by Hamas or PIJ, and performed other actions that enabled, facilitated and caused the terrorist attacks at issue herein carried out by Hamas or PIJ and the harm to the plaintiffs herein.

## UNDERLYING FACTS

### A.     Hamas

23.     Hamas is a radical terrorist organization that was established by Islamic militants in 1987. It is the Palestinian branch of the extremist Muslim Brotherhood organization.

24.     Hamas views Israel and the United States as the greatest enemies of Islam. Hamas opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West.

25.     Hamas' openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs extremist violence against civilian targets in an effort to coerce, intimidate, and influence government decision-makers and the public in Israel to accept Hamas' demands.

26.     Between the time of its founding and the dates of the terrorist attacks at issue herein (and until the present day), Hamas has carried out thousands of terrorist attacks in Israel, the West Bank, and the Gaza Strip, in which scores of Israeli and U.S. citizens, as well as the nationals of many other countries, were murdered and thousands more wounded.

27.     Between the time of its founding and the dates of the terrorist attacks at issue herein, Hamas' policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendants.

28.     Since June 2007, two years after Israel's summer 2005 disengagement from Gaza, Hamas has controlled the Gaza Strip. Under Hamas control, thousands of terrorist rockets and mortar shells have been fired from the Gaza Strip at Israeli towns and villages, terrorizing and destabilizing the lives of hundreds of thousands of Israeli citizens.

29.     Between 1999 and the dates of the terrorist attacks at issue herein, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

30.     Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

## B.     Palestine Islamic Jihad

31.     The PIJ is a radical terrorist organization. The PIJ's openly-declared goal is the creation of an Islamic state in the territory of Israel, the West Bank, and the Gaza Strip, as well as the destruction of the State of Israel, and the murder or expulsion of its Jewish residents. The PIJ seeks to achieve this goal by carrying out terrorist attacks against Israeli targets. The PIJ proudly and openly acknowledges that it uses terrorism to achieve its political goals. The PIJ uses terrorism in an effort to coerce, intimidate and influence government decision-makers and the public in Israel to accept the PIJ's demands.

32.     Between the time of its founding and October 29, 2014 (and until the present day), PIJ has carried out thousands of terrorist attacks against Israeli targets, in which scores of

33.     Israeli and U.S. citizens, as well as other foreign nationals, were murdered and hundreds more were wounded.

34.     Between 1999 and October 29, 2014, the courts of the United States, including this Court, published a number of decisions finding that PIJ was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

35.     The PIJ has been designated by the United States Government as a Foreign Terrorist Organization ("FTO") continuously since 1997 and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

36.     Since 1988 and until the present day, PIJ's headquarters have been continuously located in Damascus, Syria.

## C.     Hezbollah

37.     Hezbollah was established in Lebanon circa 1982.

38.     At all times Hezbollah is and was a radical Islamic terrorist organization which views the State of Israel, the United States, and other Western countries as its enemies.

39.     At all times Hezbollah sought, as an official and publicly-stated policy and goal of Hezbollah, to destroy the State of Israel and murder or expel its Jewish residents.

40.     At all times Hezbollah sought, as an official and publicly-stated policy and goal of Hezbollah, to ethnically cleanse the territory of the State of Israel of its Jewish population.

41.     Since its founding, through the July-August, 2006 Hezbollah Rocket barrage into northern Israel, and until today, Hezbollah has sought to achieve its goal of destroying the State of Israel and murdering or expelling its Jewish residents through the use of terrorist attacks on Jewish civilians in Israel and elsewhere.

42.     Since its founding, through the July-August, 2006 Hezbollah Rocket barrage into northern Israel, and until today, Hezbollah carried out hundreds of terrorist attacks against Jewish civilians in Israel and elsewhere, which have killed hundreds of innocent civilians and wounded hundreds more.

43.     Since its founding, through the July-August,2006 Hezbollah Rocket barrage into northern Israel, and until today, Hezbollah has used terrorism against Jewish civilians in Israel

and elsewhere in order to coerce, intimidate, and influence the Israeli government and public, and thereby ultimately bring about the destruction of the State of Israel and the murder or expulsion of the Jews in Israel.

44.     Since its founding, through the July-August,2006 Hezbollah Rocket barrage into northern Israel and until today, Hezbollah has carried out hundreds of terrorist attacks against American targets which have killed hundreds of U.S. citizens and wounded hundreds more.

45.     The terrorist attacks committed by Hezbollah between 1982 and July 12, 2006, included, inter alia, the following:

a.      The July 19, 1982 kidnapping of American University president David S. Dodge in Beirut.

b.      The April 18, 1983 car bomb attack on the United States Embassy in Beirut in which 63 people were killed.

c.      The October 23, 1983 truck bomb attack on the U.S. Marine barracks in Beirut in which 241 American military personnel were killed.

d.      The September 20, 1984 car bomb attack on the U.S. Embassy annex in Beirut in which two Americans and 22 others were killed.

e.      The March 16, 1984 kidnapping and murder of William Buckley, a CIA operative working at the U.S. Embassy in Beirut.

f.      The April 12, 1984 attack on a restaurant near the U.S. Air Force Base in Torrejon, Spain in which eighteen U.S. servicemen were killed and 83 people injured.

g.      The December 4, 1984 terrorist hijacking of a Kuwait Airlines plane in which four passengers were murdered, including two Americans.

h.      The June 14, 1985 hijacking of TWA Flight 847 in which Robert Stethem, a U.S. Navy diver, was murdered. Other American passengers were held hostage before being released on June 30, 1985.

i.      The February 17, 1988 kidnapping and subsequent murder of U.S. Marine Col. William Higgins.

j.      The March 17, 1992 bombing of the Israeli Embassy in Buenos Aires that killed 29 people and injured over 200.

k.      The July 18, 1994 bombing of the Jewish community center in Buenos Aires that killed 86 people and injured over 200.

l.      The November 28 1995, bombardment of towns in northern Israel with missiles aimed at Jewish civilians.

m.      The March 30, 1996 bombardment of northern Israeli towns with 28 missiles. A week later, Hezbollah fired 16 additional missiles, injuring 36 Israelis.

n.      The August 19, 1997 bombardment of northern Israel with dozens of missiles aimed at Jewish civilians.

o.      The December 28, 1998 bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

p.      The May 17, 1999 bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

q.      The June 24, 1999 bombardment on northern Israel, killing 2 people.

r.      The April 9, 2002 launching of missiles into northern Israeli towns.

s.      The August 10, 2003 firing of shells that killed a 16-year-old Israeli boy and wounded other Israelis.

46.     Hezbollah has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**D.      Iran's Provision of Material Support and Resources to Hezbollah**

47.     Since 1979 and until the present time, defendant Iran has continuously been governed by a militant Islamic regime which believes that Islam should be the sole world religion, that all non-Islamic nations and peoples should become Islamic and be destroyed if they refuse to do so, and that the Islamic nations, led by Iran, should rule the world exclusively.

48.     Since 1979 and until the present time Iran has been and remains, as a matter of official policy, extremely hostile to the United States (which Iran terms "the Great Satan") and to the State of Israel (which Iran terms "the Little Satan").

49.     Since 1979 and until the present time it has been the continuous and official policy and goal of Iran:

a.      To weaken, harm and undermine the United States militarily, economically and politically;

b.      To bring about and cause the eradication of the State of Israel and its replacement with an Islamic state; and

c.      To bring about and cause the murder and/or expulsion of the Jewish residents of the State of Israel.

50.     The policy and goals described in the previous paragraph are referred to collectively hereinafter as "Iran's Policy and Goals."

51.     Iran is a highly ideological and authoritarian state that does not tolerate dissent and all political subdivisions of the Iranian government, all agencies and instrumentalities of Iran and all corporations controlled or directly or indirectly owned by Iran therefore support, and seek to advance the policies and goals of Iran, including Iran's Policy and Goals. Accordingly, MOIS (which is a political subdivision of the Iranian government) supports and seeks to advance Iran's Policy and Goals.

52.     Since 1979 and until the present time, it has been the continuous and official policy of Iran to use terrorism to achieve Iran's Policy and Goals. Specifically, since 1979 and until the present time, it has been the continuous and official policy of Iran to use terrorism: (a) to intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States militarily, economically and politically, and (b) to intimidate and influence the Israeli government and public and thereby to bring about the eventual eradication of the State of Israel and its replacement with an Islamic state and the murder and/or expulsion of the Jewish residents of the State of Israel.

53.     In order to carry out and achieve Iran's Policy and Goals using terrorism, Iran established the Hezbollah terrorist organization in 1982. Since 1982 and until the present day, Hezbollah has been controlled, funded and operated by Iran. Since 1982 and until the present day, Iran has used Hezbollah to carry out thousands of terrorist attacks against American and Israeli targets, in which hundreds of innocent victims have been murdered and thousands more maimed.

54.     In 1982, Iran and Hezbollah entered into an agreement that remains in force today, pursuant to which Hezbollah undertook to carry out acts of terrorism against American and Israeli targets, and in return Iran undertook to provide Hezbollah with financial and other

material support to carry out such terrorist attacks ("Hezbollah Agreement"). The purpose of the Hezbollah Agreement was and is to achieve Iran's Policy and Goals.

55.     The courts of the United States have published numerous decisions finding that Hezbollah was responsible for carrying out terrorist attacks in which U.S. citizens were murdered or harmed. This Court has found that "Hezbollah is an Iranian proxy organization, controlled, funded and operated by Iran…Iran's control over Hezbollah is so far-reaching that [the federal courts have] repeatedly held Iran vicariously liable, under the doctrine of *respondeat superior*, for actions of Hezbollah." *Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286, 292 (D.D.C. 2003).

56.     This court in *Kaplan v. Central Bank of Iran*, et al., 55 F. Supp. 3d 189 (D.D.C. 2014) has already found Iran liable to other plaintiffs injured in the very same Hezbollah rocket barrage at issue here

**E.      Iran's Provision of Material Support and Resources to Hamas and PIJ**

57.     From 1984 until the present time, defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

58.     During the period relevant hereto, including the several year period preceding the terrorist attacks at issue herein, defendants Iran and MOIS provided Hamas and PIJ with massive financial support with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. Such financial support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist Hamas and PIJ achieve goals shared by Iran. These goals included terrorizing the Jewish

civilian population in Israel, and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

59.     The Iranian defendants provided this financial support to Hamas and PIJ pursuant to agreements reached in the 1980s between Iran and Hamas and Iran and PIJ, respectively, which remain in force until today. Under those agreements, Hamas and PIJ undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Iran undertook to provide Hamas and PIJ with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of these agreements was to achieve the goals detailed in the preceding paragraph.

60.     The Iranian defendants gave substantial aid, assistance, and encouragement to one another and to Hamas and PIJ, and provided massive financial support to Hamas and PIJ, and thereby aided and abetted Hamas and PIJ, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. The Iranian defendants did so with actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting, and provision of material support and resources to Hamas and PIJ.

61.     The Iranian defendants knowingly and willingly conspired, agreed, and acted in concert with one another and with Hamas and PIJ, in pursuance of the common plan, design, agreement, and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. The Iranian defendants did so with actual knowledge that Hamas and PIJ had killed and injured

numerous U.S. citizens in terrorist attacks and that additional U.S. citizen and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas and PIJ.

62.     At all times relevant hereto, defendant MOIS was an agency, instrumentality, and/or office of defendant Iran, and performed acts on behalf of defendant Iran, in furtherance of the interests and policy of defendant Iran and within the scope of its agency and office, within the meaning of 28 U.S.C. § 1605A(a)(1) and 28 U.S.C. § 1605A(c), which caused the terrorist attacks at issue herein and harm to the plaintiffs herein, in that defendant MOIS implemented and acted as a conduit and instrument for Iran's provision of funds and other material support to Hamas and PIJ for the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein.

63.     Defendant Iran authorized, ratified, and approved the acts of defendant MOIS.

64.     Accordingly, defendant Iran is vicariously liable for the acts of defendant MOIS.

65.     This Court repeatedly has held Iran and MOIS liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas and PIJ in Israel. See, e.g., *Braun v. Islamic Republic of Iran*, 228 F. Supp.3d 64 (D.D.C. 2017); *Wultz v. Islamic Republic of Iran*, 864 F. Supp.2d 24 (D.D.C. 2012); *Bennett v. Islamic Republic of Iran*, 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Republic of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003); *Stern v. Islamic Republic of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002); see also *Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**F.     Syria's Provision of Material Support and Resources to Hamas and PIJ**

66.     Since 1979 until the present time, defendant Syria has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

67.     During the period relevant hereto, including the several year period preceding the terrorist attacks at issue herein, defendant Syria provided Hamas and PIJ with material support and resources within the meaning of 28 U.S.C. § 1605A (a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. Such support was provided continuously, routinely, and in furtherance and as implementation of a specific policy and practice established and maintained by Syria, in order to assist Hamas and PIJ achieve goals shared by Syria. These goals included terrorizing the Jewish civilian population in Israel, and weakening Israel's economy, social fabric, and military strength, and preparedness through extremist violence targeting civilians.

68.     Defendant Syria provided the material support and resources detailed below to Hamas and PIJ pursuant to agreements reached in the late 1980s between Syria and Hamas and Syria and PIJ, respectively. Under those agreements, Hamas and PIJ undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank and Gaza, and in return Syria undertook to provide Hamas and PIJ with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of those agreements was to achieve the goals detailed in the preceding paragraph.

69.     The material support and resources which were provided by Syria to Hamas and PIJ in the years preceding the terrorist attacks at issue herein for the purpose of facilitating acts of extrajudicial killing and terrorism included inter alia: provision of financial support to Hamas

and PIJ for the purpose of carrying out terrorist attacks; provision of military-grade explosives, military firearms, and other weapons and material to Hamas and PIJ; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter "terrorist training") to Hamas and PIJ; provision of Syrian-owned and operated training bases and military facilities in which terrorist training was provided to Hamas and PIJ and their terrorist operatives; providing Hamas and PIJ and their terrorist operatives with safe haven and refuge from capture in Syria and in areas of Lebanon controlled by Syria; providing Hamas and PIJ means of electronic communication and electronic communications equipment for carrying out terrorist attacks; financial services, including banking and wire transfer services, provided to Hamas and PIJ by financial institutions owned and controlled by Syria at Syria's direction, which services were intended to and did enable Hamas and PIJ to surreptitiously transfer funds used to finance terrorist attacks; and means of transportation, including granting terrorist operatives of Hamas and PIJ passage and transportation on Syrian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

70.    At all times relevant hereto, defendant Syria provided Hamas and PIJ and their terrorist operatives with terrorist training at military training bases, camps and facilities operated and/or funded and/or controlled by Syria and located in Syria and in areas of Lebanon controlled by Syria, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. This terrorist training, which was professional and extensive and included the use of explosives, firearms and other weapons, was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Syria acting within the scope of their agency and employment and under the express command and authorization of Syria.

71.     In addition, at all times relevant hereto, Syria provided terrorist training, weapons, and funds to be used to carry out terrorist attacks to Hamas and PIJ and their terrorist operatives, by and through the agency of other terrorist organizations which received material support and resources from Syria, and which acted as instrumentalities, agents and proxies of Syria for the purpose of providing terrorist training and other material support and resources to Hamas and PIJ.

72.     At all times relevant hereto, Syria provided Hamas and PIJ and their terrorist operatives with lodging, safe haven and shelter in Syria and in areas of Lebanon controlled by Syria, with the specific intention of preventing their apprehension and permitting them to plan and carry out acts of extrajudicial killing and international terrorism freely and unhindered. This lodging, safe haven, and shelter was provided on military bases and facilities, and in residences owned and controlled by Syria.

73.     Syria gave substantial aid, assistance, and encouragement to Hamas and PIJ, and provided the massive material support and resources described above to Hamas and PIJ. Syria thereby aided and abetted Hamas and PIJ, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism including the terrorist attacks at issue herein. Defendant Syria did so with the actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting and provision of material support and resources to the Hamas and PIJ.

74.     Syria knowingly and willingly conspired, agreed, and acted in concert with Hamas and PIJ, in pursuance of the common plan, design, agreement, and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism

including the terrorist attacks at issue herein. Defendant Syria did so with actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist bombings and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas and PIJ.

75.     This Court repeatedly has held Syria liable to victims of state-sponsored terrorism carried out by terrorist groups with material support from Syria. See, e.g., *Wyatt v. Syrian Arab Republic*, 908 F. Supp.2d 216 (D.D.C. 2012); *Wultz v. Islamic Republic of Iran*, 864 F. Supp.2d 24 (D.D.C. 2012); *Gates v. Syrian Arab Republic*, 646 F. Supp.2d 79 (D.D.C. 2009), aff'd, 646 F.3d 1 (D.C. Cir. 2011).

## G.     Details of The Terrorist Attacks

### a.     *Plaintiffs Chagai Molodic and Avital Molodick – PIJ Shooting Attack on Yehuda Glick – October 29, 2014*

76.     On the evening of October 29, 2014, an agent and operative of PIJ, Mu'taz Hijazi, armed with a gun and acting on behalf of PIJ, arrived by motorcycle at the Menachem Begin Heritage Center in Jerusalem where Yehuda Glick, who is the stepfather of Chagai Molodic and Avital Molodick, was attending a conference. After Hijazi confirmed Yehuda Glick's identity, he shot Yehuda Glick at point blank range, critically wounding him (the "October 2014 Terrorist Shooting").

77.     Later that day, the terrorist shooter, Mu'taz Hijazi, was killed in a shootout with Israeli police while attempting to avoid arrest. He had a history of terrorist activity having been released from Israeli prison in 2012 after serving 11 years for various security related offenses.

78.     Yehuda Glick was taken to Jerusalem's Shaare Zedek Medical Center in serious condition where he underwent several surgeries. He was on a respirator for almost two weeks, and remained in the hospital for close to one month.

79.     On October 30, 2014, the PIJ issued a statement claiming responsibility for the attack. Senior PIJ leaders referred to the attack as "heroic."

80.     The Iranian defendants and Syria conspired and acted in concert with PIJ, in pursuit of their common goals, design, and agreements discussed above, in order to carry out the October 2014 Terrorist Shooting, and other such acts of extrajudicial killing and international terrorism. The October 2014 terrorist shooting was carried out by PIJ in furtherance and as the implementation of its aforementioned agreement and conspiracy with the defendants.

81.     PIJ carried out the October 2014 terrorist shooting utilizing funds, weapons, terrorist training, and other material support, resources, aid, and assistance provided by the defendants for the specific purpose of carrying out the October 2014 terrorist shooting and other such acts of extrajudicial killing and international terrorism.

82.     Yehuda Glick raised defendants' his step children, plaintiffs Chagai Molodic and Avital Molodick since they were toddlers, acting in all capacities as the functional equivalent of their parent. Chagai Molodic and Avital Molodick suffered severe psychological and emotional injuries as a result of the shooting attack. Their injuries are a direct result of the defendants' conduct and are directly attributable to the Hamas PIJ shooting attack on Yehuda Glick and the consequences of his injuries. The plaintiffs' trauma and damages are ongoing.

   *b.*     *Jakubowicz Plaintiffs – Wadi Zarka Shooting Attack – June 20, 2008*

83.     On June 20, 2008, at about 2 P.M., Raii Taysir Abd al-Hafiz Zahran and Saleh Ali Yusuf Rabi' Zahran, all agents and operatives of Hamas, opened fire on a group of five hikers in Wadi Zarka northeast of the city of Modi'in, Israel.

84.     As a result of the attack, three of the hikers were wounded. Plaintiff Akiva Jakubowicz was injured in the pelvis and in one of his thighs.

85.     The perpetrators of the Wadi Zarka attack were recruited by Hamas cell commander Saleh Suleiman Mustafa Ata. He recruited the perpetrators, supplied them with pistols and ammunition to perpetrate the attack, and trained them how to shoot prior to the attack.

86.     The defendants conspired and acted in concert with Hamas in pursuit of their common goals, design, and agreements discussed above to carry out this shooting attack, and other such acts of extrajudicial killing and international terrorism. This shooting attack was carried out by Hamas in furtherance and as the implementation of its aforementioned agreement and conspiracy with the defendants.

87.     Hamas carried out the Wadi Zarka shooting attack utilizing funds, weapons, terrorist training, and other material support, resources, aid and assistance provided by the defendants for the specific purpose of carrying out the Wadi Zarka shooting attack and other such acts of extrajudicial killing and international terrorism.

88.     Plaintiff Akiva Jakubowicz suffered severe physical, psychological and emotional injuries as a result of the shooting attack. His injuries are the direct result of the Defendants' conduct and are directly attributable to the Hamas shooting attack. Akiva Jakubowicz's trauma, injuries and damages are ongoing.

89.     Plaintiffs Florence, Bernard, Yonaton, Rachel, and Ayelet Jakubowicz who are Akiva Jakubowicz's parents and siblings, all suffered severe psychological and emotional injuries as a result of the shooting attack. Their injuries are a direct result of the defendants' conduct and are directly attributable to the Hamas shooting attack on Akiva Jakubowicz and the consequences of his injuries. The plaintiffs' trauma and damages are ongoing.

c.      *Kumer Plaintiffs – Hezbollah Rocket Attacks July-August 2006*

90.     Between July 12, 2006 and August 14, 2006, Hizbollah fired thousands of rockets at civilians in northern Israel (collectively hereinafter: "Hezbollah Rocket Attacks").

91.     Hezbollah carried out its barrage of rocket attacks utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by the defendants Iran and MOIS for the specific purpose of carrying out these rocket attacks and other such acts of extrajudicial killing and international terrorism.

92.     Plaintiff Malka Kumer, a resident of Safed, was 6 years old at the time of the Hezbollah Rocket Attacks. Malka Kumer suffered severe psychological trauma and emotional injuries during and as a result of the continuous Hezbollah Rocket Attacks. Said injuries are the result of the Defendants' conduct, and are directly attributable to the trauma caused by the Hezbollah Rocket Attacks. Plaintiff's trauma, injuries, and damages are ongoing.

93.     Plaintiff C.L.K., a resident of Safed, was five years old at the time of the Hezbollah Rocket Attacks. CLK suffered severe psychological trauma and emotional injuries as a result of the continuous Hezbollah Rocket Attacks. Said injuries are the result the defendants' conduct and are directly attributable to the trauma caused by the Hezbollah Rocket Attacks. Plaintiff's trauma, injuries and damages are ongoing.

d.      *Avni/Lakin/Boteach Plaintiffs - Bus 78 Attack – October 13, 2015*

94.     On the morning of October 13, 2015, agents and operatives of Hamas, Bilal Abu-Ghanem and Bahaa Alian, one armed with a gun and the other with a knife, boarded Jerusalem Bus number 78 and, acting on behalf of Hamas, began shooting and stabbing the passengers (the "Bus 78 Attack").

95.     Two Israelis were killed instantly and at least 16 others were wounded, among them decedent Richard Lakin. Decedent Richard Lakin was shot in the head and stabbed in the

face and chest. He suffered severe injuries and was taken to the hospital in critical condition. He remained in a medically induced coma and underwent multiple emergency surgeries during the two weeks following the attack before he died on October 27, 2015.

96.     Hamas praised the attack, stating it is "a message to anyone who harms our holy places," and calling for a continuation of "the intifada." Hamas also created a video reenactment of the attack and published it on the Facebook page of one of its West Bank affiliates.

97.     The defendants conspired and acted in concert with Hamas, in pursuit of their common goals, design, and agreements with Hamas, discussed above, to carry out the Bus 78 Attack, and other such acts of extrajudicial killing and international terrorism, and the Bus 78 Attack was carried out by Hamas further to and as implementation of its aforementioned agreement and conspiracy with the defendants.

98.     Hamas carried out the Bus 78 Attack utilizing funds, weapons, terrorist training, and other material support, resources, aid, and assistance provided by the defendants for the specific purpose of carrying out the Bus 78 Attack and other such acts of extrajudicial killing and international terrorism.

99.     Plaintiffs Rita Avni (Ankori), E.A., R.A., V.A., Y.L. Shachar Boteach and D.A.B. suffered severe psychological and emotional injuries as a result of the brutal attack on Richard Lakin, his subsequent hospitalization and ultimate death. Said injuries are the result the defendants' conduct and are directly attributable to the trauma caused by the shooting and stabbing attack on their father-in-law and grandfather, respectively. The plaintiff's trauma, injuries and damages are ongoing.

### FIRST CLAIM FOR RELIEF
### ON BEHALF OF THE AMERICAN CITIZEN PLAINTIFFS
### FOR DAMAGES UNDER 28 U.S.C. §1605A(c)

100.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

101.    Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

102.    Syria is a foreign state that since 1979 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

103.    Defendants Iran, MOIS and Syria provided material support and resources to Hamas and PIJ within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the June 20, 2008 terrorist shooting, the October 29, 2014 terrorist shooting and the October 13, 2015, shooting and stabbing attack on Bus 78.

104.    Defendants Iran and MOIS provided material support and resources to Hezbollah, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the July-August, 2006 Hezbollah terrorist rocket attacks.

105.    Plaintiff Akiva Jakubowicz suffered severe physical, psychological, emotional and other injuries as a result of the June 20, 2008 Hamas terrorist shooting, including: disfigurement, loss of physical and mental functions, extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish, loss of solatium, and loss of future income.

106.    Plaintiffs Malka Kumer and C.L.K. suffered severe psychological and emotional injuries as a direct result of the Hezbollah Rocket Barrage that killed over 43 Israeli civilians.

107.     The other American plaintiffs herein - the family members of plaintiff Akiva Jakubowicz – plaintiffs Florence, Bernard, Yonaton, Rachel, and Ayelet Jakubowicz, Shachar Boteach, D.A.B., Chagai Molodic, and Avital Molodick, suffered severe psychological, emotional, and other personal injuries as a result of the respective terrorist attacks in which their loved ones were killed or severely physically injured, including: extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish and loss of solatium.

108.     As a direct and proximate result of the defendants' conduct, plaintiffs suffered the injuries and harm described herein.

109.     The defendants are therefore jointly and severally liable under 28 USC 1605A(c) for the full amount of plaintiffs' damages.

110.     The conduct of the defendants was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

## SECOND CLAIM FOR RELIEF
## ON BEHALF OF ALL PLAINTIFFS
## <u>NEGLIGENCE</u>
### (Under the Law of the State of Israel)

111.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

112.     Pursuant to Fed. R. Civ. P. 44.1 plaintiffs hereby give notice of their intention to rely on the law of the State of Israel.

113.     Causes of action in tort in Israeli law are codified in the Civil Wrongs Ordinance (New Version) - 1968, (hereinafter "CWO").

114.    The CWO provides that any person injured or harmed by the civil wrongs (i.e. torts) enumerated in the CWO is entitled to relief from the person liable or responsible for the wrong.

115.    CWO § 35 creates a tort of Negligence.

116.    Under binding precedent of the Israeli Supreme Court, the tort of Negligence also includes intentional and/or reckless conduct.

117.    CWO § 35 provides that a person is liable for the tort of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

118.    CWO § 36 provides that the obligation stated in the last sentence of § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

119.    By providing material support to Hamas and PIJ, the defendants Iran, MOIS and Syria performed acts which a reasonable and prudent person would not have committed under the same circumstances, within the meaning of the CWO.

120.    By providing material support to Hezbollah, defendants Iran and MOIS performed acts which a reasonable and prudent person would not have committed under the same circumstances, within the meaning of the CWO.

121.    Defendants did not, in the performance of their occupations, use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, within the meaning of the CWO, in that, inter alia, defendants provided material support to Hamas and PIJ.

122.    Defendants acted negligently in connection with the decedents and the plaintiffs, toward whom, in the circumstances described herein, defendants had an obligation not to act as they did. Defendants were obligated not to act as they did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, persons such as the decedents and the plaintiffs were liable to be harmed by the acts of defendants described herein.

123.    The behavior of defendants constitutes Negligence under the CWO, and that negligent behavior was the proximate cause of the harm to all plaintiffs including Bernard Ben Zion Jakubowicz, Rita Avni, E.A., R.A., and V.A, which includes: loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of society and companionship, and loss of solatium.

124.    Defendants are therefore liable for the full amount of the compensatory damages due to each of the plaintiffs herein.

125.    Under Israeli case law a plaintiff harmed by an act of Negligence caused by intentional conduct is entitled to punitive damages.

126.    The conduct of defendants was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

**THIRD CLAIM FOR RELIEF**
**ON BEHALF OF ALL PLAINTIFFS**
**AIDING AND ABETTING**
**(Under the Law of the State of Israel)**

127.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

128.    Defendants Iran, MOIS and Syria knowingly and intentionally provided material support and resources to Hamas and PIJ which enabled, facilitated, supported and assisted the PIJ and Hamas to carry out the October 29, 2014 Terrorist Shooting, the Bus 78 Attack on October 13, 2015, and the Wadi Zarka shooting attack on June 20, 2008.

129.    Defendants Iran and MOIS knowingly and intentionally provided material support and resources to Hezbollah which enabled, facilitated, supported, and assisted Hezbollah in carrying out the July-August 2006 rocket barrage.

130.    Aiding and Abetting principles are recognized in § 12 of the CWO, which provides that a person who participates in, assists, advises, or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

131.    Defendants knowingly and intentionally assisted Hamas and PIJ to carry out the October 29, 2014 Terrorist Shooting that critically injured Yehuda Glick, the Bus 78 Attack where Richard Lakin was mortally wounded, and the Wadi Zarka shooting attack where Akiva Jakubowicz was injured. Defendants are therefore liable for the full amount of damages to all

plaintiffs including Bernard Ben Zion Jakubowicz, Rita Avni, E.A., R.A., and V.A, under CWO § 12.

132.    The conduct of defendants was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows:

(a)    Judgment against all defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

(b)    Judgment against all defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

(c)    Plaintiffs' costs and expenses;

(d)    Plaintiffs' attorneys fees; and

(e)    Such other and further relief as the Court finds just and equitable.

Dated:  November 16, 2017
      Brooklyn, New York

                    Respectfully submitted,

                    THE BERKMAN LAW OFFICE, LLC
                    *Counsel for Plaintiffs*

By:_____
                    Robert J. Tolchin
                    (D.C. Bar #NY0088)

                    111 Livingston Street, Suite 1928
                    Brooklyn, New York 11201
                    (718) 855-3627