UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AKIVA BINYAMIN JAKUBOWICZ, *et al.*,

*Plaintiffs*,

v.

ISLAMIC REPUBLIC OF IRAN, *et al.*,

*Defendants.*

Civil Action No. 18-1450 (RDM)

## MEMORANDUM OPINION

This case arises out of terrorist attacks that took place in Israel between July 2006 and October 2015.  Dkt. 58 at 1.  The operative complaint seeks damages pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a), for seventeen plaintiffs.  *See* Dkt. 57 at 3–5 (Am. Compl. ¶¶ 6–19).  On August 9, 2022, the Court granted default judgment for two of those plaintiffs, Shachar Boteach and D.A.B. (hereinafter "Plaintiffs").  Dkt. 58 at 3.  Those two Plaintiffs raised claims for solatium damages arising from the death of their grandfather, Richard Lakin, during a terrorist attack in Jerusalem on October 13, 2015.  *Id.* at 2; Dkt. 57 at 3 (Am. Compl. ¶ 4).  Shachar Boteach and D.A.B. were sufficiently close to Lakin to qualify as "functional equivalents" of immediate members of his family for the purpose of recovering solatium damages.  *Id*. at 16–18; *see also Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 16, 27 (D.D.C. 2011) (awarding solatium damages to grandson whose interactions with his grandfather were "sufficiently frequent and of such a nature as to render them equivalent to those interactions typical of a parent-child relationship").

For assistance in evaluating Plaintiffs' damages, the Court referred the case to a special master, Deborah E. Greenspan, to prepare a report and recommendation regarding compensatory damages. Dkt. 59. The Special Master's report lays out the effects that the attacks had on each of the victims and carefully analyzes their claims for damages under the framework for state-sponsored terrorism cases. *See generally* Dkt. 62. The Special Master did not address punitive damages. *See* Dkt. 59 at 1. The Court thanks the Special Master for her excellent assistance.

For the reasons explained below, the Court will (1) adopt, with modifications, the Special Master's proposed findings and recommendations as to Plaintiffs' compensatory damages; (2) award punitive damages to Plaintiffs; and (3) award prejudgment interest on the compensatory damages.

## I. ANALYSIS

As an initial matter, the Court agrees with and adopts the Special Master's findings of fact as to Plaintiffs Shachar Boteach and D.A.B. *See* Dkt. 62 at 2–10.

**A.     Compensatory Damages**

Shachar Boteach and D.A.B. seek solatium damages as the grandchildren of Richard Lakin. Solatium damages are expressly provided for under 28 U.S.C. § 1605A(c) and are intended to compensate for "the mental anguish, bereavement[,] and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009); *see also* 28 U.S.C. § 1605A(c). As the Court previously explained, Shachar Boteach and D.A.B. are entitled to recover solatium damages because Lakin was the functional equivalent of a parent to them. *See* Dkt. 58 at 16–18.

1.     *Solatium for Shachar Boteach*

Based on the uncontroverted evidence, the Special Master determined that Shachar Boteach continues to suffer from psychological and emotional injuries related to the trauma of her grandfather's death. Dkt. 62 at 15–16. Shachar Boteach was present for the period in which Lakin was hospitalized after the attack, where she witnessed him suffer from his injuries prior to his death. *Id.* at 15; *see also id.* at 4. She was in high school at the time and comprehended the trauma of the event. *See id*. at 3. Shachar Boteach now suffers from chronic anxiety and emotional disorders, including Adjustment Disorder with anxiety symptoms and Persistent Complex Bereavement Disorder. *Id*. at 9. Consistent with the framework laid out in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006), the Special Master recommended a baseline solatium damage award of $5 million, subject to a 25% enhancement for a total award of $6,250,000. *Id*. at 15–16. In light of Shachar Boteach's loss, the psychological distress she continues to face, and her age at the time of the event, the Court concurs with the Special Master's recommended damages, including the enhancement.

2.     *Solatium for D.A.B.*

Based on the similarly uncontroverted evidence submitted for D.A.B., the Special Master also recommended solatium damages of $5 million subject to a 25% enhancement. Dkt. 62 at 16. The Special Master concluded that D.A.B. is entitled to such an award because Lakin was a central figure in his life equivalent to a parent and because the circumstances of Lakin's death caused him grief and trauma. *Id*. at 16. The Court here departs from the Special Master's recommendation only with respect to the enhancement. The Court notes that D.A.B. was eleven years old at the time of the traumatic event, and, unlike Shachar Boteach, D.A.B., did not personally witness Lakin's suffering before his death. *See id*. at 5, 16. The Court, accordingly,

upholds the baseline solatium damage award of $5 million but does not include the 25% enhancement.

**B.    Punitive Damages**

Plaintiffs also seek punitive damages.  Dkt. 57 at 30 (Am. Compl.).  Punitive damages "serve to punish and deter the actions for which they [are] awarded," *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 87 (D.D.C. 2010), and are expressly contemplated by the FSIA, *see* 28 U.S.C. § 1605A(c).  Pursuant to the Court's order, *see* Dkt. 59 at 1, the Special Master did not consider an award of punitive damages.  Based on the record before it and in light of the Court's holding on this question as applied to other plaintiffs in the same factual scenario, *see Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 39–41 (D.D.C. 2022), the Court concludes that Plaintiffs are entitled to punitive damages.

To start, the Court is persuaded that Plaintiffs are entitled to punitive damages given that "Iran provided Hamas . . . with significant support in the form of arms and financial assistance, as well as training and technical expertise." *Force*, 617 F. Supp. 3d at 39.  Syria "similarly provided the group 'with a safe operational base from which to run [its] organization[],'" and "[f]rom their bases in Syria, Hamas raised funds, trained operatives, smuggled arms, and conducted their political and foreign relations activities." *Id*. (first and second alterations in original).

In determining the amount of punitive damages to award, courts typically consider four factors: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 65 (D.D.C. 2018) (quoting *Valore*, 700 F. Supp. 2d at 87).  As in *Force*, the Court finds that the first two

factors are satisfied: "Iran and Syria's actions enabled Hamas to carry out lethal acts of terror as part of a sustained effort to instill fear in the people of Israel." *Force*, 617 F. Supp. 3d at 39. The "need for deterrence," factor three, is clear as both Iran and Syria have a longstanding policy of material support for militant groups for the purpose of harming Americans. *See id.* at 40 (citing *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 166 (D.D.C. 2017)). Finally, factor four is satisfied because both Iran and Syria are sovereigns that have "substantial wealth." *See id.* (quoting *Colvin v. Syrian Arab Republic*, 363 F. Supp. 3d 141, 163 (D.D.C. 2019)).

The Court concludes that it is appropriate to calculate punitive damages by applying a multiplier to the base amount (referred to as the "multiplicand"). *See id.*; *Schwartz v. Islamic Republic of Iran*, No. 18-cv-1349, 2022 WL 1567358, at *4 (D.D.C. May 18, 2022). Reviewing the circumstances of Lakin's death, the Court previously determined that a multiplicand of two was appropriate in light of the Iranian and Syrian states' material support of terrorist organizations engaging in violent acts, hostage-taking, and the "tragic and horrific" nature of the acts. *Force*, 617 F. Supp. 3d at 41. Based on that finding and similar findings in other cases regarding the actions of Iran and Syria, the Court finds a multiplicand of two is appropriate in this case as well. *See id.*; *Fritz*, 324 F. Supp. 3d at 65; *Hamen v. Islamic Republic of Iran*, 407 F. Supp. 3d 1, 11 (D.D.C. 2019). The Court will, accordingly, award Plaintiffs punitive damages in an amount equal to two times their compensatory damages.

**C.     Prejudgment Interest**

Plaintiffs have requested, Dkt. 57 at 30 (Am. Compl.), and the Special Master recommends, Dkt. 62 at 17, that the Court award Plaintiffs prejudgment interest on their compensatory damage awards. In *Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 42 (D.D.C. 2022), *Fritz v. Islamic Republic of Iran*, F. Supp. 3d 54, 64 (D.D.C. 2018), and *Schwartz*

*v. Islamic Republic of Iran*, No. 18-cv-1349, 2022 WL 1567358, at *5 (D.D.C. May 18, 2022), the Court concluded that "prejudgment interest was appropriate on both 'past economic loss' and on the 'non-economic pain and suffering and solatium damages suffered by the victims' estates and families.'" *Force*, F. Supp. 3d at 42 (quoting *Fritz*, 324 F. Supp. 3d at 64); *see also Sheikh v. Republic of Sudan*, 485 F. Supp. 3d 255, 274 (D.D.C. 2020); *Ewan v. Islamic Republic of Iran*, 466 F. Supp. 3d 236, 250 (D.D.C. 2020). The Court sees no reason to revisit that conclusion here and will, accordingly, award prejudgment interest on Plaintiffs' compensatory damages.

To calculate prejudgment interest, "[t]he D.C. Circuit has explained that the prime rate— the rate banks charge for short-term unsecured loans to creditworthy customers—is the most appropriate measure of prejudgment interest." *Fritz*, 324 F. Supp. 3d at 64 n.2; *see also Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450–51 (D.C. Cir. 1996). Applying this rule, the Special Master calculated prejudgment interest at the prime rate for each year from the date of the incident. Dkt. 62 at 18–19. The Court adopts the Special Master's methodology, as it has done in prior cases using this same approach. *See Fritz*, 324 F. Supp. 3d at 64 n.2; *Force*, 617 F. Supp. 3d at 42. The Court, however, updates the resulting prejudgment interest figures to account for the time that has passed since the Special Master's report was issued in September 2023 and to account for the Court's decision not to apply the damages enhancement to D.A.B.'s compensatory award. Extending the calculation used by the Special Master, *see* Dkt. 62 at 18– 19, yields a multiplier of 1.491.[1] The Court, accordingly, concludes that Shachar Boteach is

---

[1] The Court adjusts the 2023 prime rate to the final annual rate, applies the final 2023 prime rate through all of 2023 instead of through August, and applies the present 2024 prime rate through April 25, 2024. The rates applied are as follow:
    2015: 3.26 (applied from date of incident)
    2016: 3.51
    2017: 4.10
    2018: 4.91

entitled to $3,068,750 in prejudgment interest and D.A.B. is entitled to $2,455,000 in prejudgment interest. That yields a total compensatory award of $9,318,750 for Shachar Boteach and a total compensatory award of $7,455,000 for D.A.B.

Lastly, the Court considers whether it should apply its punitive-damages multiplier before or after incorporating prejudgment interest into Plaintiffs' compensatory damages awards. As the Court explained in *Schwartz*, and again in *Force*, "the better approach is to apply the punitive-damages multiplier *after* completing the prejudgment interest calculation because, in the Court's view, prejudgment interest is necessary to provide complete recompense for Plaintiffs' compensatory damages, and because 'the *total* compensatory damages already awarded' provides the basis for Plaintiffs' punitive damages." *Force*, 617 F. Supp. 3d at 42 (emphasis in original) (quoting *Hamen*, 407 F. Supp. 3d at 10); *see also Schwartz*, 2022 WL 1567358, at *6. Most importantly, by proceeding in this manner, the Court can ensure that the punitive-damage multiplier applies to the entire compensatory loss and that the happenstance of when judgment is entered does not have a material effect on the ultimate value of the judgment.

## CONCLUSION

The Court will enter a separate order awarding damages to Plaintiffs as described above.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: April 25, 2024

---

2019: 5.28
2020: 3.54
2021: 3.25
2022: 4.86
2023: 8.20
2024: 8.50 (current rate)